JANE CAVINS,            )
                    )
         Plaintiff,    )
                    )
       v.           )    No. 4:06 CV 1543 DJS
                    )             DDN
MICHAEL J. ASTRUE,[1]     )
Commissioner of Social Security, )
                    )
         Defendant.    )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security granting, in part, the application of plaintiff Jane Cavins for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. § 401, et seq. The action was referred to the undersigned United States Magistrate Judge for review and a recommended disposition under 28 U.S.C. § 636(b). For the reasons set forth below, the undersigned recommends that the ALJ's decision be reversed.

## I. BACKGROUND

Plaintiff Jane Cavins was born on September 3, 1946. (Tr. 20.) She is 5'6" tall with a weight that has ranged from 196 pounds to 214 pounds. (Tr. 215, 236.) She completed eight years of school and last worked as a sewing machine operator in March 2004. Before that, she worked as a buy-back clerk for an oil company, from 2000 to 2001. Before that, she spent close to seventeen years working as a sewing machine operator. (Tr. 25-26, 152.)

On June 25, 2004, Cavins applied for disability benefits, alleging she became disabled on November 25, 2003, as a result of chronic

---

[1]Jo Anne B. Barnhart was the original defendant. Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted as defendant in this suit. 42 U.S.C. § 405(g).

obstructive pulmonary disease (COPD), coronary artery disease (CAD), diabetes mellitus, hyperthyroid, deep vein thrombosis (DVT), arthritis, high cholesterol, acid reflux, irritable bowel syndrome, asthma, and depression.[2]   The claim was initially denied on August 25, 2004. Following a hearing on December 21, 2005, the ALJ issued a partially favorable decision on March 25, 2006.   (Tr. 13, 21, 101.)  In his decision, the ALJ concluded Cavins became disabled on December 1, 2005. (Tr. 13.)  On August 18, 2006, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (Tr. 3.)

In her complaint, Cavins alleges she became disabled on November 25, 2003.  (Doc. 1 at 2.)  In response, the Commissioner admits that Cavins is disabled, but maintains the onset date occurred on December 1, 2005.  (Doc. 7 at 1.)  Only the onset date is at issue.  (Doc. 14; Doc. 17.)

## II.  MEDICAL HISTORY

On January 11, 2002, Dr. Liwa Younis, M.D., saw Cavins at Gateway Cardiology.  Cavins reported increasing episodes of pain in her left arm, left neck, and almost daily discomfort in her chest.  She also complained of shortness of breath with exertion.   Cavins had no significant dyspnea or orthopnea.[3]  An examination revealed no acute distress.  There was no sign of edema in her lower extremities and her

---

[2]Hyperthyroidism is an abnormality of the thyroid gland in which secretion of thyroid hormone is usually increased and is no longer controlled.  Hyperthyroidism is characterized by a hypermetabolic state, weight loss, and tremulousness, which may progress to severe weakness. Stedman's Medical Dictionary, 746 (25th ed., Williams & Wilkins 1990). Thrombosis is clotting within a blood vessel which may cause a loss of blood to the tissues supplied by the vessel.   Id., 779, 1597.

[3]Dyspnea is shortness of breath, usually associated with a disease of the heart or lungs.  Stedman's Medical Dictionary, 480.  Orthopnea is discomfort in breathing which is brought on or aggravated by lying flat.  Id., 1102.

heart was normal.[4] Her lungs showed a mild decrease in air entry, but no rales or wheezes. (Tr. 245-46.)

On March 11, 2002, Cavins saw Dr. Younis, complaining of increasing episodes of shortness of breath with any kind of activity, such as walking or working around the house. Cavins was also complaining of multiple episodes of chest discomfort, fatigue, and nonproductive cough. She reported taking several Nitroglycerin over the previous several days.[5] (Tr. 243-44.)

On May 2, 2002, Cavins saw Dr. Sanjay Bhat, M.D., and Dr. Mary Joseph, M.D., complaining of abdominal pain. Cavins denied smoking or drinking. The doctors diagnosed her with abdominal discomfort, likely from a flare up of her irritable bowel syndrome, and diverticulosis.[6] The doctors scheduled a colonoscopy. (Tr. 421-22.) On June 12, 2002, Cavins underwent a colonoscopy with biopsy. From the biopsy, the doctors found internal hemorrhoids, colon polyps, and diverticulosis.[7] (Tr. 418-20.)

On June 14, 2002, Dr. Nizar Assi, M.D., saw Cavins at Gateway Cardiology. Cavins was complaining of persistent shortness of breath with exertion. Dr. Assi found Cavins positive for chest tightness and arm discomfort, palpitations, shortness of breath with exertion, constipation, indigestion, fatigue, tiredness, and lower extremity edema. Dr. Assi diagnosed Cavins with coronary artery disease (CAD), chronic obstructive pulmonary disease (COPD), hyperlipidemia, myalgia,

---

[4]Edema is an accumulation of watery fluid in cells, tissues, or cavities. Stedman's Medical Dictionary, 489.

[5]Nitroglycerin is used to treat chest pain due to angina or heart attack. http://www.webmd.com/drugs. (Last visited January 18, 2008).

[6]Diverticulitis is an inflammation of the small pockets in the wall of the colon. Stedman's Medical Dictionary, 460.

[7]A polyp is any mass of tissue that bulges or projects outward or upward from the normal surface level. A polyp may be a tumor, an inflammation, lesion, or malformation. Stedman's Medical Dictionary, 1237.

anxiety / depression, and gastroesophageal reflux disease (GERD).[8] (Tr. 239-40.)

On October 2, 2002, Cavins saw Dr. Assi, complaining of significant pain in her right arm and shoulder. An examination showed her lungs were clear and her heart rate and rhythm were both normal. Dr. Assi diagnosed Cavins with stable CAD, stable COPD, hyperlipidemia, and hypertension. He believed her right arm and shoulder pain could be the result of spurring at C5-6.[9] At the time, Cavins was taking Aspirin, Cartia, Diovan, Imdur, Nexium, Pravachol, Prozac, Theophylline, Vioxx, and was using Advair and Combivent inhalers.[10] (Tr. 235-36.)

On May 21, 2003, Dr. Assi examined Cavins. Dr. Assi did not believe her shortness of breath was cardiac related, and recommended Cavins continue to use her inhalers. Cavins exhibited normal ventricular systolic function. (Tr. 409-11.)

On May 28, 2003, Cavins saw Dr. Michelle Bellamy, M.D., complaining of pain in her knees, pain in her upper and lower abdomen, trouble sleeping, chest pains, and shortness of breath. The abdominal pain would come and go, and was unaffected by food. Nothing seemed to make

---

[8]Hyperlipidemia is the presence of an abnormally large amount of lipids in the circulating blood. Stedman's Medical Dictionary, 741, 884. Myalgia is muscle pain. Id., 1009.

[9]The human spinal column consists of thirty-three vertebrae. There are seven cervical vertebrae (denoted C1-C7), twelve thoracic vertebrae (denoted T1-T12), five lumbar vertebrae (denoted L1-L5), five sacral vertebrae (denoted S1-S5 and fused together into one bone, the sacrum), and four coccygeal vertebrae (fused together into one bone, the coccyx). The cervical vertebrae form part of the neck, while the lumbare vertebrae form part of the lower back. The sacrum is immediately below the lumbar vertebrae. Stedman's Medical Dictionary, 226, 831, 1376, 1549, 1710, Plate 2. A spur, or calcar, is a small projection from a bone. Stedman's Medical Dictionary, 227.

[10]Cartia is used to treat high blood pressure and chest pain. Diovan is used to treat high blood pressure. Imdur is used to treat chest pain. Nexium is used to treat acid-related stomach and throat problems, such as acid reflux or GERD. Pravachol is used to lower cholesterol and fats in the blood. Prozac is used to treat depression. Theophylline is used to treat and prevent breathing difficulties. Vioxx was used to treat arthritis pain. The advair and combivent inhalers are used to treat breathing difficulties such as COPD. http://www.webmd.com/drugs. (Last visited January 18, 2008).

the abdominal pain better or worse.  Dr. Bellamy diagnosed Cavins with osteoarthritis in each knee, hematuria, lower abdominal pain, COPD, and CAD.[11]  Dr. Bellamy referred her to an orthopedist for possible cortisone injections and prescribed Glucosamine for her arthritis.  (Tr. 295-96.)

On June 13, 2003, Dr. Gregory Becker, M.D., tested Cavins's lungs. Dr. Becker found moderate bronchial airflow obstruction, evidence of air trapping, and a moderately reduced diffusing capacity for carbon monoxide (DLCO).  Dr. Becker attributed the reduced DLCO to the moderate obstruction.  Cavins had no significant upper airway obstruction.  (Tr. 356.)

On August 27, 2003, Cavins saw Dr. Bellamy, complaining of abdominal pain in her left upper quadrant for the past several months. Turning to the sides made the pain worse.  The burning in her abdomen would get worse when working in the factory without air conditioning. Cavins also noted pain in her legs from the knees down, when sitting or laying, but not when walking.  (Tr. 292-93.)

On September 9, 2003, Cavins received a CT scan of her abdomen and pelvis.  The test found the lung bases were unremarkable, but found the appearance of masses in the right adrenal gland and nodular thickening in the left adrenal gland.[12]  The doctor believed the masses could be adenomas and recommended an MRI.[13]  (Tr. 331-32.)  A subsequent MRI revealed benign adrenal adenomas.  (Tr. 326-27.)

On December 19, 2003, Cavins saw Dr. Bellamy.  She stated her breathing was unchanged, and that the particles in her work place exacerbated her condition.  Her breathing was slightly diminished, but there were no rales or rhonchi.  (Tr. 289-90.)

**Medical History after the Car Accident**

---

[11]Hematuria is a condition in which the urine contains blood. Stedman's Medical Dictionary, 693.

[12]The adrenal glands are located near the upper portion of each kidney.  Stedman's Medical Dictionary, 29.

[13]An adenoma is a benign tumor, in which the tumor cells form glands or gland like structures.  Stedman's Medical Dictionary, 24.

On March 7, 2004, Cavins was involved in a car accident. She was in the front passenger seat when the car was struck by another vehicle, causing her face and knees to hit the dashboard. (Tr. 287, 370.) She was admitted to St. Anthony's Medical Center for blunt head injury, vomiting, and multiple contusions. (Tr. 394.) An MRI of her knee revealed a prepatellar hematoma and a possible fracture of bone and cartilage in the patella.[14] She also had a small tear in the medial meniscus.[15] (Tr. 370.)

On March 8, 2004, an MRI revealed a small tear in the periphery of the medial meniscus, a flat hematoma in the prepatellar tissue, and a osteochondral fracture or bone contusion in the patella. The MRI also showed an edema in the anterior, medial, and lateral aspect of the right knee, and small nonspecific hyperintense foci in the tibia.[16] (Tr. 391-92.)

On March 15, 2004, Cavins saw Dr. Kriegshauser, complaining of bilateral knee pain that had begun after the car accident. An examination revealed a prepatellar effusion and a significant amount of ecchymosis in each knee.[17] Dr. Krieghauser diagnosed her with a bilateral knee contusion and a right knee torn meniscus with a hematoma and a possible fracture. Cavins was to be kept off work for at least the next four weeks. (Tr. 370.)

On April 15, 2004, Cavins saw Dr. Kriegshauser, complaining of persistent pain in her right and left knee. Cavins told Dr. Kriegshauser that "she is unable to do her job with her knees the way [they] are currently." Dr. Kriegshauser discussed the possibility of

_____

[14]A hematoma is localized mass of blood that is relatively or completely confined within an organ or tissue. Stedman's Medical Dictionary, 691. The patella is the kneecap. Id., 1149.

[15]The meniscus is a fibrocartilaginous structure of the knee. Stedman's Medical Dictionary, 944.

[16]The tibia is the shin bone. Stedman's Medical Dictionary, 1600.

[17]Effusion is the escape of fluid from the blood vessels into the tissues or into a cavity. Stedman's Medical Dictionary, 491. Ecchymosis refers to a purplish patch caused by blood passing out of the blood vessels and into the skin. Id., 484, 553.

an arthroscopic evaluation. (Tr. 368.) The next day, Cavins underwent a meniscectomy and chondroplasty on both knees and a limited synovectomy on the left knee.[18] (Tr. 287, 366.)

On April 23, 2004, Cavins saw Dr. Bellamy, complaining of chest pain. Her breathing was normal. Dr. Bellamy diagnosed Cavins with CAD, COPD, hypertension, high cholesterol, and a forehead hematoma. (Tr. 287.)

On April 23, 2004, Cavins saw Dr. Assi, complaining of increased chest pain, radiating to her left arm, and increasing dyspnea with exertion. Cavins had significant reduction in her lung capacity. Dr. Assi diagnosed her with atypical chest pain and arm pain, CAD, tobacco use, and chronic obstructive airway disease with reduction in her diffusion capacity. Dr. Assi increased her Imdur and Cartia prescriptions. (Tr. 406-07.)

On April 26, 2004, Cavins saw Dr. Kriegshauser, complaining of a cramping type pain in her right calf area. An examination showed a small effusion of the right knee. The puncture wounds from the car accident had healed and the sutures were removed. (Tr. 364.)

On May 3, 2004, Dr. Bellamy noted Cavins was having a rough time with her deep vein thrombosis (DVT) and osteoarthritic pain. Cavins noted feeling bubbles in her chest, which Dr. Bellamy attributed to esophageal thickening. Dr. Bellamy diagnosed Cavins with DVT, osteoarthritis, esophageal thickening, irritable bowel syndrome, a frontal hematoma, stable COPD, high cholesterol, and high blood sugar. (Tr. 284-85.)

On May 6, 2004, a CT scan of Cavins's head showed no fractures, hemorrhaging, or any other abnormality. (Tr. 396.)

On May 26, 2004, x-rays of Cavins's chest showed her lungs were clear. The x-rays showed mild degenerative changes in the thoracic vertebrae. (Tr. 323.)

---

[18]A meniscectomy is the surgical removal of all or part of a torn meniscus. http://www.webmd.com/search. (Last visited January 4, 2008). A chondroplasty is reparative or plastic surgery of cartilage. Stedman's Medical Dictionary, 298. A synovectomy is the surgical removal of the membrane of a joint. Id., 1541.

On May 28, 2004, Cavins saw Dr. Bellamy complaining of pain from the hematoma on her forehead, a cough, and more shortness of breath than usual. Dr. Bellamy diagnosed Cavins with COPD, high blood sugar, a hematoma, DVT, osteoarthritis, CAD, and hypertension. (Tr. 280-81.)

On June 2, 2004, Cavins underwent testing at Quest Diagnostics. The testing revealed she was diabetic and hyperthyroid. (Tr. 313.)

On June 10, 2004, Cavins underwent an ultrasound of her thyroid. The test revealed a mass in the left lobe, measuring 3.9 cm by 4.9 cm. The doctors believed the mass was consistent with uninodular goiter.[19] (Tr 335.)

On June 11, 2004, Dr. Bellamy noted Cavins had stable angina, shortness of breath, diarrhea, joint pain, and uninodular goiter.[20] She diagnosed Cavins with a new onset of diabetes. (Tr. 278-79.)

On June 15, 2004, Jay Diamond, a physical therapist with ProRehab, detailed Cavins's progress. During her initial visit on May 26, 2004, Cavins's primary complaint was that she could not go back to work and could not go up or down steps. During two subsequent visits, Cavins complained of sharp, almost constant, pain in her right calf and knee. Diamond noted that her "compromised respiratory system as well as symptomatic complaints of lower extremity discomfort limit the aggressiveness of physical therapy rehabilitation." At the same time, he found Cavins "has been very cooperative with all in-house treatment and seems compliant with the home exercise program prescribed thus far." (Tr. 361-62.)

On June 21, 2004, Cavins complained of aches in her knees, and noted she was recently diagnosed with hyperthyroidism, diabetes, and severe COPD. Her primary care doctor indicated she was going to place her on disability. An examination showed tenderness in the knees, but no effusion and good range of motion. Dr. Kriegshauser gave her cortisone injections in each knee. (Tr. 360.)

---

[19]Goiter is a chronic enlargement of the thyroid gland. Stedman's Medical Dictionary, 662.

[20]Angina refers to a severe constricting pain, usually in the chest. Stedman's Medical Dictionary, 79.

On June 25, 2004, S. Yeager interviewed Cavins over the phone. In a disability report, Yeager noted hearing "her heavy labored breathing over the phone." (Tr. 168-70.)

On July 7, 2004, Cavins completed a work activity report. The Social Security Administration had requested her work history from November 2003. From January 2001 to March 5, 2004, Cavins worked as a sewing machine operator, working forty hours a week, on average. Cavins stopped working on account of her medical condition. Cavins missed work in January and February of 2003, because of surgery. She worked steadily until late November 2003, when she began to miss a week of work "here and there." In March 2004, Cavins was involved in a car accident, at which point, she had to quit working altogether. (Tr. 145-50.)

On July 8, 2004, an individual (the signature is illegible) completed a Social Security Administration form, recommending an onset date of March 5, 2004, the date of Cavins's car accident, and the last day she performed substantial gainful activity. (Tr. 126.)

On July 9, 2004, Cavins was diagnosed with DVT, diabetes, TB thyrotoxicosis, and COPD.[21] (Tr. 275-76, 372.)

On July 9, 2004, Dr. Joseph Hurley, M.D., examined Cavins and found no evidence of DVT in the right lower extremity and no evidence of superficial phlebitis in right lower extremity.[22] (Tr. 334.)

On July 22, 2004, Cavins still had soreness in her left knee, though her right knee was doing better. Dr. Kriegshauser administered a cortisone injection in her left knee. (Tr. 219, 360.)

On July 23, 2004, Evenly Beers, a friend of Jane Cavins, completed a function report. Beers estimated she would spend three days a week with Cavins. Beers noted Cavins's impairments affected numerous aspects of her life. Cavins could not always dress herself, needed help to bathe herself, would sometimes need help going to the bathroom, and could not do her laundry because it required climbing stairs. Cavins would drive, cook, and shop for groceries. Beers estimated Cavins could

[21]Thyrotoxicosis is the state of having excessive quantities of thyroid hormone. Stedman's Medical Dictionary, 1600.

[22]Phlebitis is inflammation of a vein. Stedman's Medical Dictionary, 1186.

walk no farther than twenty-five feet before requiring a ten-minute rest. Cavins's impairments affected her ability to lift, sit, climb stairs, squat, kneel, bend, stand, reach, walk, and complete tasks. Beers noted that Cavins always seemed to be out of breath. (Tr. 127-34.)

On July 23, 2004, Cavins completed a function report. She spent her days watching television or talking on the phone, but stated she did not know what else to do, because she was used to working. She would have to shower at her daughters' homes because she cannot get out of the bathtub. She required a "port of pot" next to the bed. Cavins would prepare some meals and would clean the dishes, but her husband took care of most things around the house. She would not travel anywhere on a regular basis. She could not sing to her granddaughter or walk too far without losing her breath. The pain in her legs and knees kept her from climbing stairs. She would try to mop the kitchen, but would have to sit down because she could not breath. (Tr. 136-43.)

On July 23, 2004, Cavins completed a pain questionnaire. She noted pain in her knee, leg, arm, and chest, sometimes occurring every day. Walking produced an awful pain in her left knee, with the pain gravitating up and down her leg. She could not stoop or squat, and said the pain has limited her activities for more than a year. She indicated a desire to work, because she loved her job, but her doctor told her it was time to take it easy. She said her legs would swell all day from the sitting. (Tr. 144.)

On July 23, 2004, Cavins completed a work history. From November 1982 to April 1999, she worked as a supervisor of sewing operations. As part of her job, she supervised ten employees. She worked forty hours a week and would walk two hours and sit six hours each day. From January 2000 to January 2001, she worked as a buy-back clerk. She worked forty hours a week, and sat for eight hours each day. From January 2001 to March 2004, she worked as a sewing machine operator, working forty hours a week. She would walk one hour and sit seven hours each day, but would not lift anything heavier than ten pounds. (Tr. 152-59, 161.)

On August 11, 2004, Dr. Robert Griesbaum, M.D., completed a medical questionnaire from the Missouri Section of Disability Determinations. He noted a moderate decrease in breathing sounds and dyspnea on exertion, such as inclines of more than four steps and doing household chores. He noted Cavins was not currently on oxygen. (Tr. 347-49.)

On August 23, 2004, Shani Greenberg completed a physical residual functional capacity assessment for Jane Cavins. She found Cavins could occasionally lift or carry twenty pounds, could frequently lift ten pounds, could stand or walk for six hours in an eight-hour day, and could sit for six hours in a normal eight-hour day. She also found Cavins could frequently climb stairs, balance, stoop, and kneel. Greenberg found Cavins's statements and allegations "fully credible." (Tr. 118-25.)

On August 24, 2004, Ricardo Moreno, Psy. D., a psychologist, completed a psychiatric review of Cavins. He found no medically determinable impairment. (Tr. 104-16.)

On September 9, 2004, Cavins complained of bilateral knee pain, with the pain in the right knee worse than the left. Cavins said the cortisone injections helped, but the pain had returned. Examination of her knees showed no effusion or erythema.[23] She had good range of motion, no nerve damage, and her ligaments were stable. Cavins received another cortisone injection. (Tr. 219.)

On September 16, 2004, Dr. Tammam Al-Joundi, M.D., saw Cavins for a follow-up. Dr. Al-Joundi noted Cavins was positive for chest pain, pressure, and heaviness. She showed shortness of breath with exercise, but no dyspnea or orthopnea. A physical examination showed no acute distress. She was diagnosed with CAD, controlled hypertension, hyperlipidemia, and diabetes mellitus. (Tr. 225-26.) Dr. Al-Joundi performed a nuclear imaging study during this visit, which revealed a fixed anteroseptal defect and normal left ventricular function. (Tr. 228.)

From October 1, 2004, to October 30, 2004, Cavins underwent event monitor study. Dr. Assi studied nine transmissions from this period,

_____

[23]Erythema is inflammatory redness of the skin. Stedman's Medical Dictionary, 533.

and noted the "transmissions correlated with symptoms of chest pains, rapid heart beat, shortness of breath, and chest heaviness." Dr. Assi concluded Cavins had occasional episodes of tachycardia, correlating with symptoms of dyspnea, chest heaviness, and palpitations.[24] (Tr. 227, 341.)

On October 8, 2004, Cavins complained of chest pains, pain in her knees, and diarrhea. Dr. Bellamy believed the diarrhea could be the result of problems with her thyroid, and recommended a thyroid biopsy. (Tr. 267.)

On October 22, 2004, Dr. Younis saw Cavins. Dr. Younis found Cavins mildly to moderately short of breath with activity. Her lungs showed a mild decrease in the air entry without significant expiratory wheezes or rales. Dr. Younis diagnosed Cavins with CAD, hypertension, chest pain syndrome, possible GERD, goiter, hyperlipidemia, and COPD. At the time, Cavins was taking, Celebrex, Isosorbide, Metformin, Nexium, Pravachol, Prozac, Singulair, Tiazac, and was using inhalers.[25] (Tr. 223-24, 342-43.)

On November 11, 2004, doctors examined Cavins abdominal region with an endoscope. The test found Cavins's esophagus and duodenum to be normal, no evidence of masses, but some scar tissue from her GERD. (Tr. 344-45.)

On December 7, 2004, Cavins complained of left leg numbness, which had begun on November 24, 2004, and ongoing bilateral knee pain. The pain would increase when walking. Cavins denied any prior problems with numbness in her leg or any history of back problems. Examination of her leg showed no obvious deformity. Cavins was diagnosed with degenerative joint disease of the lumbosacral spine, radicular pain of the lower left

---

[24]Tachycardia is rapid beating of the heart, usually over 100 per minute. Stedman's Medical Dictionary, 1550.

[25]Celebrex is an anti-inflammatory drug used to treat arthritis. Isosorbide is used to prevent angina and reduce strain on the heart from CAD. Metformin is used to control high blood sugar. Singulair is used to treat or prevent asthma. Tiazac is used to treat high blood pressure and angina. http://www.webmd.com/drugs. (Last visited January 18, 2008).

extremity, and osteoarthritis of the left knee. The examining doctor referred Cavins to Dr. Ashok Kumar, M.D. (Tr. 218.)

On December 8, 2004, Cavins saw Dr. Irina Veronikis, M.D., complaining of left leg and thigh pain. She was to see a neurologist. She also had swelling in her neck and was to be referred to surgery for a thyroidectomy. (Tr. 175.)

On December 14, 2004, Cavins saw Dr. Kumar, complaining of pain in her lower left side. Cavins denied any major lower back pain, pain in her thigh, or major weakness. She reported the numbness was worse when standing or walking for a prolonged period of time. A physical examination revealed no acute distress and a normal gait. Examination of the lumbosacral spine showed no tenderness, but there was some narrowing and osteophyte formation at L5-S1. Dr. Kumar diagnosed Cavins with possible lateral cutaneous femoral nerve irritation, and suggested a nerve conduction test.[26] At the time, Cavins was taking Advair, Celebrex, Glucophage, Isosorbide, Nexium, Pravachol, Prozac, and Singulair.[27] (Tr. 214-16.)

On December 21, 2004, Cavins saw Dr. Kumar, complaining of pain in her lower left side. Dr. Kumar tested Cavins's nerves and found no major nerve damage in her lower extremities. He found electrodiagnostic evidence of a mild sensory peripheral neuropathy.[28] (Tr. 209-11, 213.)

On February 11, 2005, Dr. Bellamy found Cavins had coughing, shortness of breath, and trouble swallowing. The doctor diagnosed her with bronchitis, COPD, diabetes, high cholesterol, and hypertension. The doctor prescribed her Mucinex to help with the bronchitis. (Tr. 264.)

On March 7, 2005, Cavins saw Dr. E.R. Habert, M.D., complaining of neck pain, radiating around her shoulder region. Dr. Habert examined

---

[26]Cutaneous relates to the skin. Stedman's Medical Dictionary, 382.

[27]Glucophage is used to control high blood sugar. http://www.webmd.com/drugs. (Last visited January 18, 2008).

[28]Neuropathy is any disorder affecting any segment of the nervous system. Stedman's Medical Dictionary, 1048.

Cavins and found myofascial tenderness around her cervical region.[29]  X-rays of the spine revealed found slight narrowing at C6-7 with marginal spurring and sclerosis.[30]  He also noted degenerative uncovertebral joint changes at C5-6 and C6-7.  Dr. Habert prescribed her Feldene to help with the pain, since Cavins had recently discontinued taking Celebrex. (Tr. 208, 212.)

On March 18, 2005, Cavins complained of pain in each of her upper arms and in her neck and shoulder.  She said her left leg was numb from the knee up.  Dr. Bellamy noted she had been on painkillers and muscle relaxers for the past year.  Cavins stated that she had seen a back specialist, but did not think the specialist had treated her well.  Dr. Bellamy diagnosed Cavins with left leg paresthesia and upper arm myalgias.[31]  (Tr. 261.)

On March 28, 2005, Cavins underwent an MRI of her spine.  The test showed facet degeneration and mild narrowing at C3-4, and disk bulging at C6-7, but no canal stenosis.  There was a slight protrusion at L5-S1 and mild facet degeneration at L4-5.  (Tr. 320-21.)

On May 9, 2005, Cavins was referred to Dr. Linda Hunt, M.D., for significant body pain.  Dr. Hunt took her history.  About four to six months earlier, Cavins reported developing pain in her upper arms.  The pain in her left arm was so severe it would wake her up.  Cavins said the pain was constant, and lifting anything aggravated the pain.  Cavins also had numbness in her anterior left leg when she walked, but denied any significant pain in her hips, though they felt stiff.  Cavins complained of pain in both knees, and had been diagnosed with arthritis in each.  (Tr. 194.)

Cavins also suffered from back problems.  Two years earlier, she had a cervical fusion at C4-6.  A recent MRI showed fusion of C4-6, with a bulging disk at C6-7, but no significant canal or neural foraminal

---

[29]Myofascia is the fibrous tissue surrounding and separating muscle tissue.  Stedman's Medical Dictionary, 565, 1016.

[30]Sclerosis is the hardening of tissue.  Stedman's Medical Dictionary, 1393.

[31]Paresthesia is an abnormal sensation, such as burning, pricking, or tingling.  Stedman's Medical Dictionary, 1140.

encroachment. The MRI showed spine narrowing at L5-S1, and facet degeneration at L4-5. Dr. Hunt noted Cavins was applying for disability based on her asthma, COPD, and knee problems. ( Id.)

A physical examination showed her lungs were clear, with no wheezing. She was overweight and her abdomen was obese. Her shoulders had no obvious swelling, but had decreased range of motion, which caused pain in the upper arms. The wrists had normal range of motion, and her hands were nontender over the joints. The knees had "1 to 2+ swelling bilaterally" with decent range of motion. There was no swelling in the ankles. Dr. Hunt diagnosed Cavins with possible polymyalgia rheumatica (PMR), possible paresthesia, and pain and stiffness in the proximal shoulder and arm.[32] (Id.)

On June 10, 2005, Cavins complained of feeling fatigued. She stated her pain was better, but her breathing was the same. Dr. Bellamy noted coughing and diagnosed Cavins with insomnia, PMR, diabetes, COPD, and CAD. (Tr. 259.)

On June 17, 2005, Cavins saw Dr. Hunt, complaining of significant left knee pain. Dr. Kriegshauser had previously administered cortisone injections and suggested knee replacement surgery. Despite taking Arthrotec her knees still hurt. Cavins was looking to move to a one-story home because activity was making her left knee worse. A physical examination showed swelling in both knees, and the left one, in particular, was tender. During this visit, Dr. Hunt injected Cavins's left knee with Lidocaine and withdrew about 2 ccs of yellow fluid. Dr. Hunt diagnosed Cavins with possible PMR and a left knee effusion. (Tr. 192.)

On July 20, 2005, Cavins saw Dr. Hunt, complaining of pain in her lower legs and feet, especially at night. She also complained of pain and numbness in her hands. Cavins had been taking Prednisone for the last two months, which was helping to relieve her shoulder stiffness. A physical examination showed bony enlargements in both knees, and the right knee was more tender than the left. Dr. Hunt diagnosed Cavins

---

[32]Polymyalgia rheumatica is an inflammatory condition affecting the joints, especially the joints found in the hip, neck, and shoulders. http://www.webmd.com (Last visited January 18, 2008).

with PMR, osteoarthritis of both knees, and neuropathic extremity pain. The notes indicate Cavins had been told she needed knee replacements. (Tr. 191.)

On August 31, 2005, Cavins saw a doctor. According to the notes, Dr. Griesbaum had recently x-rayed Cavins's chest and suspected Cavins was suffering from lung disease and pulmonary vascular disease. A physical examination revealed "a middle aged woman who looks very tired. She looks short of breath." Her skin showed scattered erythematous papules and telangiectasia.[33] Her shoulders showed tenderness and limited abduction and external rotation, both of which caused pain. The knees showed no signs of significant swelling or tenderness. (Tr. 190.)

On October 28, 2005, Cavins saw Dr. Hunt, complaining of PMR. Cavins had received bilateral shoulder bursal injections, but the relief from the injections quickly wore off. Cavins reported significant pain in both shoulders and her upper arms. A physical examination showed fairly good range of motion in the shoulders, but with tenderness. Her hands had a mild puffiness in the metacarpophalangeal joints, but were not tender.[34] Her hips showed good range of motion and her ankles had no edema. (Tr. 189.)

On November 12, 2005, Cavins completed a disability report for an appeal. She stated that each day was becoming more and more difficult. "My breathing problems, knee pain and chest pain, combined with my depression, make it very difficult to function." (Tr. 91-97.)

On November 14, 2005, Cavins underwent a blood count and tested positive for mild anemia. (Tr. 298.)

**Medical History after December 1, 2005**

On December 9, 2005, Dr. Hunt found Cavins had PMR and was taking Prednisone daily. A physical examination showed good motion in her shoulders and no tenderness over the thoracic spine. (Tr. 182.)

---

[33]Papules are solid elevations on the skin. Stedman's Medical Dictionary, 1131. Telangiectasia is abnormal dilation of the blood vessels located just below the skin's surface. See id., 1558.

[34]The metacarpi are the five bones of the hand between the carpus and the phalanges. Stedman's Medical Dictionary, 952.

On December 15, 2005, a medical source statement indicated Cavins could lift no more than five pounds frequently. She could stand and/or walk for less than one hour in an eight-hour workday, and sit for between two and four hours. Cavins could not perform any pushing or pulling, and needed to assume a reclining position for ten minutes at least three times a day. She could never climb, kneel, or crouch. Cavins was diagnosed with moderate COPD, CAD, asthma, chronic pain and steroid dependence, diabetes, and bilateral knee pain -- the result of total knee replacement for each knee. (Tr. 185-86.)

**Testimony at the Hearing**

At the hearing on December 21, 2005, Cavins described her work history and her ailments. Cavins suffered from lung disease that produced shortness of breath. Walking up stairs, walking up any inclined surface, singing, and even talking for too long would bring on the shortness of breath. The breathing difficulties also limited the daily activities Cavins could perform. She would need to rest in the middle of doing chores like sweeping the floor or changing the bed sheets. Cavins quit smoking in February 2001, at the recommendation of her doctors, Dr. Griesbaum and Dr. Assi. (Tr. 25-28A.)

Cavins suffered from coronary artery disease. In 2002, the doctors put in a stent. Cavins was able to return to work, but there have been other blockages since the stent surgery. (Tr. 28A-29.)

In March 2004, Cavins was involved in a car accident. Both knees struck the dashboard, tearing the cartilage in each knee, and requiring surgery. Cavins ended up with DVT. Cavins's forehead struck the windshield and she testified that she has headaches from that blow. Shortly after the accident, Cavins noted pain in her neck and shoulders and saw a specialist. The doctors did not link the neck and shoulder pain to the accident. (Tr. 29-30.)

Cavins stated she could stand in the same area for no longer than five or ten minutes. Beyond that, she would have to lean and her legs would get real weak. She could sit in a chair no longer than a half-hour, after which she would feel pain in her shoulders and need to recline. Cavins could lift no more than a gallon of milk, and briefly

at that.  She could not walk one block without requiring rest for shortness of breath.  At the time of the hearing, Cavins was taking Aleve, Arthrotec, Darvocet, and Prednisone.[35]  (Tr. 30-32.)

In a typical day, Cavins would lie down around three or four times. She could rinse the dishes, put the laundry in the washing machine, and sort the clothes, but no more.  Cavins would also get a daily tingling in her hands and feet.  Cavins stopped working on the date of the car accident.  (Tr. 32-38.)

### III.  DECISION OF THE ALJ

After considering the claimant's work record, her subjective complaints, her medication, and the opinions of treating and examining physicians, the ALJ found Cavins qualified for benefits under the Social Security Act as of December 1, 2005.  Before December 1, 2005, the ALJ found Cavins had the RFC to occasionally lift and carry ten pounds, and frequently lift and carry less than ten pounds.  He found she could stand or walk two hours in an eight-hour work day, and sit for eight hours.  (Tr. 16.)

The ALJ found Cavins suffered from a history of deep vein thrombosis, a history of diskectomy and fusion at C4-5 and C5-6, with narrowing of the C6-7 interspace.[36]  The ALJ also found Cavins suffered from mild to moderate coronary artery disease, hypertension, hyperlipidemia, chronic obstructive pulmonary disease, polymyalgia rheumatica, osteoarthritis of the knees, including a bilateral total knee replacement, and mild sensory peripheral neuropathy.  ( Id.)

The ALJ recited Cavins's subjective complaints and the relevant medical history, and found Cavins's not entirely credible for the period predating December 1, 2005.  Before that date, the ALJ found no evidence

---

[35]Aleve and Arthrotec are used to relieve pain and inflammation. Darvocet is a drug with a narcotic component and is used to treat mild to moderate pain.  http://www.webmd.com/drugs. (Last visited January 18, 2008).

[36]Diskectomy is the surgical removal of an intervertebral disk. M i r i a m - W e b s t e r ' s    O n l i n e    D i c t i o n a r y , http://medical.merriam-webster.com /medical/medical?book=Medical&va=di skectomy. (Last visited January 18, 2008.)

that supported the allegation of a need to lie down throughout the day. The ALJ concluded that any need to lie down before December 1, 2005, was a matter of personal choice. (Tr. 19.)

The ALJ also discounted the evidence relating to Cavins's limited daily activities. Limited daily activities could not be objectively verified. In addition, the ALJ was reluctant to attribute any connection between the limited activities and a medical condition because the medical evidence was relatively weak before December 1, 2005. Finally, the ALJ noted that Cavins had worked during her alleged onset date, an inconsistency that created some question about her credibility for the period before December 1, 2005. (Tr. 19.)

At the same time, the ALJ found Cavins herself, very credible. The ALJ found her testimony genuine and her behavior consistent with her symptoms. Cavins's strong work history was another factor lending to her credibility. But since the ALJ only observed her behavior during the hearing in December 2005, he was reluctant to relate it back to an earlier date. For the period after December 1, 2005, the ALJ found no inconsistencies that would bring Cavins's credibility into serious question. (Id.)

For the period after December 1, 2005, the ALJ found Cavins had the RFC to lift only about five pounds, and she did not have the capacity to sustain sedentary work activity on a regular and continuing basis. Before December 1, 2005, the ALJ found Cavins had the RFC to perform past work as a buy-back clerk. Before December 1, 2005, the ALJ found Cavins had mild to moderate impairments. (Tr. 19-20.)

## IV.  GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that detracts from, as well as supports, the Commissioner's decision. See Prosch v. Apfel, 201 F.3d

1010, 1012 (8th Cir. 2000). As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least 12 months. See 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A). A five-step regulatory framework governs the evaluation of disability in general. See 20 C.F.R. § 404.1520; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Fastner v. Barnhart, 324 F.3d 981, 983-84 (8th Cir. 2003). If the Commissioner finds that a claimant is disabled or not disabled at any step, a decision is made and the next step is not reached. 20 C.F.R. § 404.1520(a)(4).

In this case, the Commissioner determined that Cavins lacked the residual functional capacity (RFC) to perform her past work after December 1, 2005.

## V.  DISCUSSION

Cavins argues the ALJ's decision is not supported by substantial evidence. In particular, Cavins argues medical evidence demonstrates that her impairments were severe and limiting before December 2005. (Doc. 14.)

### Subjective Complaints

The ALJ must consider the claimant's subjective complaints. Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). In evaluating subjective complaints, the ALJ must consider the objective medical evidence, as well as the so-called Polaski factors. Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005). These factors include: 1) the claimant's daily activities; 2) the duration, frequency, and intensity of the claimant's pain; 3) precipitating and aggravating factors; 4) dosage,

effectiveness, and side effects of medication; and 5) functional restrictions. Id. That said, the ALJ does not need to recite and discuss each of the Polaski factors in making a credibility determination. Casey, 503 F.3d at 695. The ALJ may discount subjective complaints of pain, when the complaints are inconsistent with the evidence as a whole. Id. When rejecting a claimant's complaints of pain, the ALJ must "detail the reasons for discrediting the testimony and set forth the inconsistencies found." Guilliams, 393 F.3d at 802. When the ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, the reviewing court "will normally defer to the ALJ's credibility determination." Casey, 503 F.3d at 696.

Substantial evidence does not support the ALJ's decision. In his decision, the ALJ found Cavins to be very credible. He found her testimony genuine and her behavior consistent with her symptoms. He noted that her strong work history provided further support for her allegations. Yet, the ALJ was reluctant to relate any of Cavins's symptoms to a period before the hearing. With all due respect, the ALJ provided no legally sufficient reason for his decision not to relate Cavins's symptoms back to a period predating the hearing.

The ALJ also discounted the evidence relating to Cavins's limited daily activities because her activities could not be objectively verified. This statement is problematic. Under Polaski, the ALJ must consider a claimant's daily activities. To determine whether the activities indicate a disability, the ALJ is charged with determining whether the claimant is credible. The ALJ is not charged with determining whether the activities are verifiable. See Adkins v. Astrue, No. 7:06-CV-132-D(2), 2007 WL 4320719, at *6 n.1 (E.D.N.C. Dec. 6, 2007) (finding "troubling" the ALJ's characterization that claimant's daily activities could not be "objectively verified"). Indeed, the ALJ may not reject subjective complaints of pain merely because the pain cannot be objectively verified. Roberson v. Astrue, 481 F.3d 1020, 1025 (8th Cir. 2007).

And yet, several of Cavins's alleged limitations were verified. On July 23, 2004, Evenly Beers noted that Cavins could not always dress herself, needed help bathing herself, sometimes needed help going to the

bathroom, and could not climb stairs. Beers estimated that Cavins could not walk farther than twenty-five feet before requiring rest, and added that Cavins's impairments affected her ability to lift, sit, climb stairs, squat, kneel, bend, stand, reach, walk, and complete tasks. She also noted that Cavins always seemed to be out of breath.

Substantial medical evidence provides further support for Cavins's allegations of disabling pain. Shortly after the car accident, Dr. Kriegshauser diagnosed Cavins with a bilateral knee contusion and a torn meniscus with a hematoma. He stated Cavins should be kept off work for four weeks. In April 2004, Cavins told Dr. Kriegshauser she was unable to work because of her knees. The next day, Cavins had surgery on both knees. A short time later, Dr. Assi found Cavins had a significant reduction in her lung capacity. In May 2004, Dr. Bellamy noted Cavins was having a rough time with her DVT and osteoarthritic pain.

In June 2004, Jay Diamond, a physical therapist, stated Cavins's respiratory and knee problems limited the aggressiveness of her physical therapy. He added that Cavins had been cooperative and compliant with the exercise programs that had been prescribed. That same month, S. Yeager noted Cavins's heavy breathing over the phone. In July 2004, someone from the Social Security Administration recommended an onset date of March 5, 2004.

In August 2004, Dr. Griesbaum noted Cavins suffered from dyspnea with exertion, such as an incline of more than four steps and performing household chores. That same month, Shani Greenberg stated Cavins's complaints were "fully credible." In October 2004, medical testing showed Cavins suffered from chest pain, rapid heart beat, shortness of breath, and chest heaviness. That same month, Dr. Younis found Cavins's lungs showed a mild decrease in air entry.

In February 2005, Dr. Bellamy diagnosed Cavins with shortness of breath. In March 2005, Dr. Bellamy noted Cavins had been on painkillers and muscle relaxers, and diagnosed her with left leg paresthesia. In May 2005, Dr. Hunt found Cavins had swelling in both knees. In June 2005, Dr. Hunt suggested knee replacement surgery. In July 2005, Dr.

Hunt noted bony enlargements in each of Cavins's knees. In August 2005, another doctor found Cavins looked short of breath and very tired.

From January 2002 to December 2005, Cavins consistently complained of difficulties with her knees and chest. During this time, several different examiners found her complaints fully credible. In a function report, Evenly Beers confirmed several of Cavins's daily limitations. During the hearing, the ALJ also found Cavins very credible. Cavins's work history demonstrated consistent work from November 1982 until March 2004. In fact, Cavins expressed satisfaction and enjoyment with her past jobs, and frustration and boredom with finding herself suddenly unable to work. Cavins last worked just before the car accident.

Substantial medical evidence supports Cavins's subjective complaints of disabling pain. The ALJ erred by discounting these subjective complaints and by discounting Cavins's daily limitations.

## VI. RECOMMENDATION

For the reasons set forth above, it is the recommendation of the undersigned that the decision of the Commissioner of Social Security be reversed and remanded under Sentence 4 of 42 U.S.C. § 405(g). Upon remand, the Commissioner should award disability benefits based upon a period of disability beginning March 7, 2004.

The parties are advised that they have ten days to file written objections to this Report and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.


　　　　　　　　　　　　　 /S/   David D. Noce
　　　　　　　　　　　　 **UNITED STATES MAGISTRATE JUDGE**


Signed on January 28, 2008.